# No. 25-1608

## In the United States Court of Appeals for the Second Circuit

JEAN-PHILIPPE MAHEU, *Petitioner-Appellee*,

v.

THE NEW YORK TIMES COMPANY, KATE CONGER, *Appellees-Intervenors*,

TWITTER, INC., X CORP., *Respondents-Appellants*.

On Appeal from the
United States District Court for the Southern District of New York
No. 1:25-cv-00836-GHW; Hon. Gregory H. Woods

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF APPELLANTS AND REVERSAL

Jonathan D. Urick
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
Telephone: (202) 659-6000
jurick@uschamber.com

Donald M. Falk
SCHAERR|JAFFE LLP
One Embarcadero Center
Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942
dfalk@schaerr-jaffe.com

Gene C. Schaerr
SCHAERR|JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* Chamber of Commerce of the United States of America states that it is a non-profit corporation organized under the laws of the District of Columbia. The Chamber has no parent corporation, and no publicly held corporation has 10% or greater ownership in the Chamber.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF INTEREST AND SOURCE OF AUTHORITY
    TO FILE ............................................................................................ 1

INTRODUCTION.................................................................................3

ARGUMENT ........................................................................................5

   A.   Confidentiality—When Parties Agree to It—Is A Core
       Characteristic of Arbitration. ...................................................5

   B.   Scholarship and Practice Underscore that Confidentiality
       Is Central to Arbitration.............................................................9

   C.   Sealing A Confidential Arbitration Award Attached to An
       Uncontested Petition to Confirm Accords with the First
       Amendment................................................................................ 15

       1.   Only the weakest presumption of public access
           applies to a confidential arbitration award attached
           to an uncontested petition to confirm it.......................... 16

       2.   The robust federal policy favoring enforcement of
           arbitration agreements as written overrides any
           presumption of public access...........................................20

       3.   When a petition to confirm is uncontested, the entire
           confidential arbitration award should be sealed. ............23

       4.   Permitting the mere invocation of the confirmation
           procedure to nullify confidentiality provisions in
           arbitration agreements would have harmful
           consequences...................................................................24

CONCLUSION ...................................................................................27

CERTIFICATE OF COMPLIANCE...................................................28

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*20/20 Commc'ns, Inc. v. Crawford,*
930 F.3d 715 (5th Cir. 2019) ........................................................ 7

*Am. Express Co. v. Italian Colors Rest.,*
570 U.S. 228 (2013) ................................................................. 3, 21

*AT&T Mobility, LLC v. Concepcion,*
563 U.S. 333 (2011) ...................................................................... 6

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,*
814 F.3d 132 (2d Cir. 2016) ..................................................... 19, 20

*Billie v. Coverall N. Am., Inc.,*
No. 23-672-cv, 2024 WL 4380618 (2d Cir. Oct. 3, 2024) ...................... 25

*Caley v. Gulfstream Aerospace Corp.,*
428 F.3d 1359 (11th Cir. 2005) ...................................................... 7

*Courthouse News Serv. v. Corsones,*
131 F.4th 59 (2d Cir. 2025) ................................................... *passim*

*Del. Coal. for Open Gov't, Inc. v. Strine,*
733 F.3d 510 (3d Cir. 2013) ........................................................ 7, 14

*Giuffre v. Maxwell,*
146 F.4th 165 (2d Cir. 2025) ..................................................... 16, 19

*Guyden v. Aetna, Inc.,*
544 F.3d 376 (2d Cir. 2008) ......................................................... 5, 8

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
552 U.S. 576 (2008) .................................................................... 18

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,*
379 F.3d 159 (5th Cir.2004) ..................................................... 7, 8, 9

*In re IBM Arb. Agreement Litig.,*
76 F.4th 74 (2d Cir. 2023) .................................................... *passim*

*In re Teligent, Inc.*,
  640 F.3d 53 (2d Cir. 2011)......................................................................8

*Janvey v. Alguire*,
  847 F.3d 231 (5th Cir. 2017) .........................................................5, 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) ...............................................................................9

*Press-Enter. Co. v. Super. Ct. Cal.*,
  478 U.S. 1 (1986) .......................................................................... 17, 20

*Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
  170 F.3d 1 (1st Cir. 1999)......................................................................7

*Stafford v. IBM*,
  78 F.4th 62 (2d Cir. 2023) .......................................................... *passim*

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ..........................................................................6, 9

*Waller v. Georgia*,
  467 U.S. 39 (1984) ...............................................................................21

**Statutes**

9 U.S.C. § 9 ............................................................................... 17, 18

9 U.S.C. § 10 ...............................................................................24

28 U.S.C. § 652 .............................................................................8

**Other Authorities**

AAA,
  Commercial Arbitration Rules (2009).................................................14

AAA & ABA,
  *Code of Ethics for Arbitrators in Commercial Disputes*
  (2004) ...................................................................................................14

Pamela K. Bookman,
  *Arbitral Courts*, 61 Va. J. Int'l L. 161 (2021)....................................10

Br. for Intervenors-Appellants,
*Guiffre v. Maxwell*, 146 F.4th 165 (2d Cir. 2025)
(No. 24-182), Dkt. 37 ......................................................................20

J. Noble Braden,
*Sound Rules and Administration in Arbitration*,
83 U. Pa. L. Rev. 189 (1934)...........................................................12

Alexis C. Brown,
*Presumption Meets Reality: An Exploration of the
Confidentiality Obligation in International Commercial
Arbitration*, 16 Am. U. Int'l L. Rev. 969 (2001) ...................................11

Edward Brunet et al.,
*Alternative Dispute Resolution: The Advocates Perspective*
(2016) ............................................................................................10

Christopher M. Campbell,
*U.S.A. vs. The World: Right to Public Access of Court
Records and Confidentiality Concerns in Commercial
Arbitration*, 15 S.C. J. Int'l L. & Bus. 99 (2018).................................11

Michael Collins,
*Privacy and Confidentiality in Arbitration Proceedings*,
30 Tex. Int'l L.J. 121 (1995) .............................................................10

Bernardo M. Cremades & Rodrigo Cortes,
*The Principle of Confidentiality in Arbitration:
A Necessary Crisis*, 23 J. Arb. Stud. 25 (2013) ..................................10

Edward P. Dolido,
*Confidentiality During and After Arbitration, in*
Am. Arb. Ass'n, Handbook on Commercial Arbitration
(3d ed. 2016) ................................................................................11

Christopher R. Drahozal,
*FAA Preemption After Concepcion*,
35 Berk. J. Emp. & Lab. L. 153 (2014) .................................................9

Int'l Inst. for Conflict Prevention & Resol.,
*Rules for Non-Administered Arbitration* (2007) .................................15

Bruce H. Mann,
*The Formalization of Informal Law: Arbitration
Before the American Revolution*,
59 N.Y.U. L. Rev. 443 (1984)..............................................................10

Soia Mentschikoff,
*Commercial Arbitration*, 61 Colum. L. Rev. 846 (1961)......................12

Robert J. Niemic et al., Fed. Jud. Ctr.,
Guide to Judicial Management of Cases in ADR (2001) ......................8

Pet'r-Appellee's Resp. Br.,
*Stafford v. IBM*, 78 F.4th 62 (2d Cir. 2023)
(No. 22-1240), Dkt. 62 .........................................................................19

Avinash Poorooye & Ronán Feehily,
*Confidentiality and Transparency in International
Commercial Arbitration: Finding the Right Balance*,
22 Harv. Neg. L. Rev. 275 (2017).......................................................11

Richard C. Reuben,
*Confidentiality in Arbitration: Beyond the Myth*,
54 U. Kan. L. Rev. 1255 (2006) ......................................................9, 22

Mayank Samuel,
*Confidentiality in International Commercial Arbitration:
Bedrock or Window-Dressing?*, Kluwer Arb. Blog
(Feb. 21, 2017) ....................................................................................11

Amy J. Schmitz,
*Untangling the Privacy Paradox in Arbitration*,
54 U. Kan. L. Rev. 1211 (2006) ............................................... 13, 14, 27

UNCITRAL,
Arbitration Rules (2010) .....................................................................14

Mitch Zamoff,
*Safeguarding Confidential Arbitration Awards in
Uncontested Confirmation Actions*,
59 Am. Bus. L.J. 505 (2022) ........................................................*passim*

## STATEMENT OF INTEREST AND SOURCE OF AUTHORITY TO FILE

The Chamber of Commerce of the United States of America is the world's largest business federation.[1] It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber has filed *amicus curiae* briefs in many cases like this one raising issues of vital concern to the nation's business community, including cases addressing arbitration procedures and judicial review of arbitration awards. A motion for leave to file this *amicus* brief has accordingly been submitted.

Many Chamber members depend on arbitration as a low-cost and efficient mechanism to resolve disputes of all types—including consumer

---

[1] No party or counsel for a party authored this brief in whole or in part or contributed money that was intended to fund preparing or submitting this brief, and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

and workplace disputes—in a fair and swift manner. The Chamber has long supported arbitration as a beneficial dispute-resolution mechanism for all parties, including consumers and workers. Indeed, based on the experience of the Chamber and its members, arbitration allows businesses to reach fair resolutions of disputes with customers, clients, users, workers, and independent contractors, while avoiding the high cost of litigation in court. This in turn allows businesses to keep prices affordable and sustain economic growth.

Many arbitration agreements require that the proceedings and any award remain confidential. As explained below, such confidentiality can benefit both parties to the agreement, while fostering the informality of procedure that is one of arbitration's greatest benefits. The reasoning of the decision below is legally erroneous and threatens to nullify confidentiality provisions whenever a party asks a court to confirm an arbitration award, even when the award is uncontested. That would deprive businesses and other parties of the benefit of their bargain, and the reduced incentives to arbitrate would shift more disputes into the court system.

## INTRODUCTION

If endorsed by this Court, the decision below would effectively nullify every agreement to keep arbitration awards confidential—flouting the Supreme Court's instruction to "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (cleaned up). Under the rationale below, mere invocation of the ministerial judicial function of confirming an arbitration award would make the arbitration award public.

The Supreme Court, this Court, and other courts of appeals have repeatedly recognized that the ability to keep proceedings confidential is one of the most important characteristics of arbitration. That recognition is rooted in the history of arbitration as a private remedy. Moreover, scholars and practitioners alike have acknowledged that confidentiality—when parties agree to it, as they have here—provides one of the strongest incentives to choose arbitration to resolve disputes. The ability to ensure that arbitration proceedings and decisions are confidential mutually benefits businesses, employees, and consumers.

3

In that light, sealing confidential arbitration awards that are submitted in connection with an uncontested petition to confirm is consistent with the First Amendment, even assuming that such awards are judicial documents subject to a presumption of public access. Any such presumption is exceptionally weak given that an uncontested confirmation proceeding is ministerial and involves no meaningful exercise of judicial discretion. The petition and any resulting judgment of confirmation will be public, providing ample information about this narrow exercise of judicial power. In contrast, the higher value of preserving arbitration as an attractive means of alternative dispute resolution—in accord with legislative and judicial policy—easily outweighs any presumption of public access in the context of a rubber-stamp confirmation proceeding.

The balance of interests favors preserving confidentiality even more strongly here, where the district court never considered whether to confirm the award and took no action with respect to it. When an award or its confirmation are contested, a court would have to examine more closely whether and to what extent the award should be sealed or redacted. But an uncontested award plays no part in the judicial process

4

other than supplying the parties and amount that may be transformed into a public judgment—a judgment that never came into being here.

This Court has a strong interest in preserving the benefits of the parallel dispute-resolution system endorsed in the Federal Arbitration Act (FAA). Parties are more likely to choose arbitration to resolve their disputes if they have confidence that courts will enforce the agreed-upon confidentiality of an arbitration award. And the availability of the robust parallel system of dispute resolution benefits the courts by diverting from the public docket disputes that can be resolved privately.

The order of the district court should be reversed.

## ARGUMENT

### A. Confidentiality—When Parties Agree to It—Is A Core Characteristic of Arbitration.

1. The Supreme Court and this Court alike have recognized that "confidentiality is a paradigmatic aspect of arbitration." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008). Indeed, "[a]rbitration as we … know it was built on a bedrock interest of autonomy and its correlative, privacy." *Janvey v. Alguire*, 847 F.3d 231, 247 (5th Cir. 2017) (Higginbotham, J., concurring). The ability to keep the proceedings and their result confidential is part and parcel of the "informality of arbitral

proceedings" that is "the principal advantage of arbitration." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345, 348 (2011).

Courts have repeatedly recognized that confidentiality is a key reason parties prefer to arbitrate rather than litigate in court. Among other things, confidentiality ensures that trade secrets and sensitive financial information are not divulged to competitors. *See, e.g., id.* at 344–45. And confidentiality of the arbitral award allows parties to resolve disputes conclusively without setting precedent that will bind or influence the resolution of future disputes among themselves or others. Indeed, it was in part because "[c]onfidentiality becomes more difficult" under class procedures that the Supreme Court held that judicially compelled class arbitration "is inconsistent with the FAA." *Id.* at 348. The Court further clarified the central role of confidentiality in many arbitration agreements when it noted that removing confidentiality would "potentially frustrat[e] the parties' assumptions when they agreed to arbitrate." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010). "Such sentiments not only acknowledge confidentiality as a bargained-for virtue of arbitration, but also bring a judicial view that it

6

is to be protected." *Janvey*, 847 F.3d at 248 (Higginbotham, J., concurring).

The courts of appeals have reached similar conclusions. "[O]ne of the perceived benefits of arbitration, in contrast to litigation, is the protection of the privacy and confidentiality of the parties." *20/20 Commc'ns, Inc. v. Crawford*, 930 F.3d 715, 719 (5th Cir. 2019). Thus, "[c]onfidentiality is a natural outgrowth of the status of arbitrations as private alternatives to government-sponsored proceedings." *Del. Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510, 518 (3d Cir. 2013); *see also id.* at 525 (Roth, J., dissenting) (noting emphasis on confidentiality in arbitration from "colonial times" to the present). And, courts recognize, both parties to employment and consumer litigation have reason to desire confidentiality. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378–79 (11th Cir. 2005) (citing *Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 8 n.4 (1st Cir. 1999) (employment); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th Cir.2004) (consumer)).

Statutes and court rules addressing alternative dispute resolution also recognize that confidentiality is one of its core advantages. The

7

statute authorizing federal courts to adopt alternative dispute-resolution methods (including arbitration) requires the proceedings to be kept confidential. *See* 28 U.S.C. § 652(d) ("[E]ach district court shall … provide for the confidentiality of the alternative dispute resolution processes and … prohibit disclosure of confidential dispute resolution communications."). As the Federal Judicial Center stated, "Confidentiality is generally considered a bedrock principle for most ADR procedures." Robert J. Niemic et al., Fed. Jud. Ctr., Guide to Judicial Management of Cases in ADR 93–94 (2001), https://tinyurl.com/2n77ntu8. And this Court has "vigorously enforce[d] the confidentiality provisions of [its] own alternative dispute resolution, the Civil Appeals Management Plan ("CAMP"), because [it] believe[s] that confidentiality is 'essential' to CAMP's vitality and effectiveness." *In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011) (citations omitted).

Against that backdrop, this Court concluded that "confidentiality clauses are so common in the arbitration context that [an] 'attack on the confidentiality provision is, in part, an attack on the character of arbitration itself.'" *Guyden*, 544 F.3d at 385 (quoting *Iberia*, 379 F.3d at 175). As the *Iberia* court observed, if arbitration decisions are as public

8

and potentially precedential as judicial decisions, parties would have incentives to demand "all of the procedural accoutrements that accompany a judicial proceeding," which would nullify the core advantages of arbitration: its "'simplicity, informality, and expedition.'" 379 F.3d at 175–76 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

## B. Scholarship and Practice Underscore that Confidentiality Is Central to Arbitration.

Legal scholars and practitioners have confirmed the importance of confidentiality as a benefit of arbitration that influences parties to choose that mode of dispute resolution. "Confidentiality (or, more precisely, privacy) certainly is a fundamental attribute of arbitration, as the Supreme Court has noted." Christopher R. Drahozal, *FAA Preemption After Concepcion*, 35 Berk. J. Emp. & Lab. L. 153, 167 (2014) (citing *Stolt-Nielsen*, 559 U.S. at 686). "[E]xperience suggests that privacy is one of the more important process values for those who choose to use arbitration to resolve disputes." Richard C. Reuben, *Confidentiality in Arbitration: Beyond the Myth*, 54 U. Kan. L. Rev. 1255, 1278 (2006). Indeed, "[t]he promise of confidentiality is the primary reason many disputants"—both individuals and commercial parties—"elect to arbitrate." Mitch Zamoff,

9

*Safeguarding Confidential Arbitration Awards in Uncontested Confirmation Actions*, 59 Am. Bus. L.J. 505, 506 (2022).

1. This is nothing new. "In English law … it has for centuries been recognized that arbitrations take place in private." Michael Collins, *Privacy and Confidentiality in Arbitration Proceedings*, 30 Tex. Int'l L.J. 121, 122 (1995). And in colonial times, the "privacy of the process" was one of the "qualities [that] made arbitration attractive." Bruce H. Mann, *The Formalization of Informal Law: Arbitration Before the American Revolution*, 59 N.Y.U. L. Rev. 443, 456 (1984).

For nearly a century, scholars have recognized that confidentiality provides a central reason businesses choose to arbitrate rather than litigate in court—the "most salient" by one account, Bernardo M. Cremades & Rodrigo Cortes, *The Principle of Confidentiality in Arbitration: A Necessary Crisis*, 23 J. Arb. Stud. 25, 26 (2013), and the "single most important feature" by another, Zamoff, *supra,* 59 Am. Bus. L.J. at 518 (quoting Edward Brunet et al., *Alternative Dispute Resolution: The Advocates Perspective* 436 (2016)). *See also id.* at 517 & n.50 (collecting sources); Pamela K. Bookman, *Arbitral Courts*, 61 Va. J. Int'l L. 161, 176 (2021) (explaining that parties "often choose arbitration

10

specifically to keep their business disputes—and other information about their businesses—confidential"); Christopher M. Campbell, *U.S.A. vs. The World: Right to Public Access of Court Records and Confidentiality Concerns in Commercial Arbitration*, 15 S.C. J. Int'l L. & Bus. 99, 119 (2018) ("[C]onfidentiality is a driving force" for many parties selecting arbitration); Avinash Poorooye & Ronán Feehily, *Confidentiality and Transparency in International Commercial Arbitration: Finding the Right Balance*, 22 Harv. Neg. L. Rev. 275, 277-78 (2017) ("Confidentiality is one of the hallmarks of arbitration[.]" (footnote omitted)); Mayank Samuel, *Confidentiality in International Commercial Arbitration: Bedrock or Window-Dressing?*, Kluwer Arb. Blog (Feb. 21, 2017) ("[C]onfidentiality is one of the primary reasons" commercial parties prefer arbitration), https://tinyurl.com/bdfzs9rw; Edward P. Dolido, *Confidentiality During and After Arbitration*, *in* Am. Arb. Ass'n, Handbook on Commercial Arbitration 50 (3d ed. 2016) (noting that confidentiality is "one of the most influential reasons for choosing arbitration"); Alexis C. Brown, *Presumption Meets Reality: An Exploration of the Confidentiality Obligation in International Commercial Arbitration*, 16 Am. U. Int'l L. Rev. 969, 972 (2001)

11

(confidentiality and privacy are "primary reasons many parties choose to arbitrate instead of litigate"); Soia Mentschikoff, *Commercial Arbitration*, 61 Colum. L. Rev. 846, 849 (1961) (identifying the "desire for privacy" as one of the "chief moving factors" for commercial arbitration); J. Noble Braden, *Sound Rules and Administration in Arbitration*, 83 U. Pa. L. Rev. 189, 195 (1934) ("The privacy of arbitration is one of its great advantages.").

As these analysts have recognized, there are "many legitimate reasons why commercial parties" might desire "confidential treatment" of arbitration awards. Zamoff, *supra,* 59 Am. Bus. L.J. at 518.

First, commercial enterprises may fear that their involvement in certain types of disputes may be "used to harm [their] business by critics or competitors." *Id.* at 550–51. This is especially true when parties "need or want to continue [their business relationship] after the arbitration has concluded" and wish to avoid the public perception of "beat[ing]" or "losing to" one another. *Id.* at 518–19. Second, "commercial parties may want to avoid adverse precedent, particularly with respect to recurring issues that are integral to their business model." *Id.* at 519. While the interest in obtaining a confidential adjudication "without the risk that an

12

adverse decision will be used against the losing party in the future" is not a cognizable privacy interest in the courts, it is a "legitimate privacy interest" in "the arbitration arena." *Id.* at 551–52. "There is no requirement that private dispute resolution generate public precedents," and courts must be careful not to view "the parties' underlying privacy interests through an overly narrow litigation lens" and discount these interests in keeping an arbitration award confidential. *Id.* at 552. Third, a commercial party "may be concerned that an award will give critics and rivals a window into its private business or legal strategy that would be harmful from a competition perspective." *Id.* at 519.

2.  Scholars have further recognized that individual parties who are not sophisticated, high-frequency litigants also have many reasons to value confidentiality when choosing arbitration. For starters, "privacy and confidentiality in arbitration may benefit individuals with cases involving sensitive personal information" such as poor financial histories or workplace sexual harassment claims. Amy J. Schmitz, *Untangling the Privacy Paradox in Arbitration*, 54 U. Kan. L. Rev. 1211, 1212–13 (2006). "[A]rbitration's private proceedings allow parties to resolve their disputes quietly without suffering public embarrassment[.]" *Id.* at 1224. Without

13

the promise of confidentiality, individuals in cases involving potentially embarrassing information may avoid asserting their claims. *See id*. at 1239.

Even when cases do not involve such sensitive information, the "expansion of technology, growth of corporate use of personal information, and epidemic [of] identity theft" mean that all individuals "should be concerned with [the] confidentiality of their personal information … revealed in presenting arbitration claims and proving damages." *Id*. at 1239. Arbitration allows individuals concerned with personal information becoming public the security of a confidential proceeding.

3. Practice confirms the observations of scholarship. Not only are confidentiality provisions routine in commercial as well as employment arbitration agreements, but "the major national and international arbitral bodies continue to emphasize confidentiality" in their rules and practices. *Delaware Coalition*, 733 F.3d at 525–26 (Roth, J., dissenting) (citing AAA & ABA, *Code of Ethics for Arbitrators in Commercial Disputes*, Canon VI(B) (2004); AAA Commercial Arbitration Rules R-23 (2009); UNCITRAL, Arbitration Rules art. 21(3) (2010)); *see also*, *e.g.*,

14

Int'l Inst. for Conflict Prevention & Resol. (CPR), *Rules for Non-Administered Arbitration* 24, R. 18 (2007), https://tinyurl.com/mw2xdv4s ("[T]he parties, the arbitrators and CPR shall treat the proceedings, any related discovery and the decisions of the Tribunal, as confidential.").

In short, confidentiality is well-recognized as a core value in and core incentive supporting the use of arbitration.

**C.**    **Sealing A Confidential Arbitration Award Attached to An Uncontested Petition to Confirm Accords with the First Amendment.**

Assuming that a confidential arbitration award attached to a petition to confirm qualifies as a judicial record, there is a "qualified, presumptive First Amendment right of public access." *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 67 (2d Cir. 2025) ("*CNS*"). If the Court agrees with X Corp. that the petition is not subject to this presumption, however, no further analysis is necessary.

But even if the Court disagrees, treating the arbitration award attached to a petition to confirm as a judicial document is just the beginning of the confidentiality analysis—especially because the petition itself is fully public. At most, a very weak presumption of public access applies to an arbitration award attached to an uncontested petition to

15

confirm because the district court's function in that circumstance is purely ministerial—and the presumption is weaker still here, where the petition was dismissed before the district court engaged with it. In that light, the federal policy favoring enforcement of arbitration agreements as written—including their confidentiality provisions—overrides the presumption of public access, and the confidential award should be sealed in full. The Court should not permit every invocation of the statutory confirmation procedure to nullify confidentiality provisions applicable to arbitration awards. Such a rule would deter the use of arbitration and thus burden the courts.

> **1.  Only the weakest presumption of public access applies to a confidential arbitration award attached to an uncontested petition to confirm it.**

This Court recently reaffirmed that "the relative strength of the presumption of access may differ among different kinds of judicial documents." *Giuffre v. Maxwell*, 146 F.4th 165, 178 (2d Cir. 2025). The Court evaluates the strength of the presumption using an "experience and logic" test. *CNS*, 131 F.4th at 66. That approach examines whether the specific type of document historically has been accessible to the public, and whether public access "plays a significant positive role in the

16

functioning of the particular process." *Id.* at 66–67 (quoting *Press-Enter. Co. v. Super. Ct. Cal.*, 478 U.S. 1, 8 (1986)).

While complaints and petitions have been accessible historically, arbitration awards have not. And logic dictates that, given the importance of confidentiality as an incentive to arbitrate, public access to an underlying arbitration award would be counterproductive to the process of judicial enforcement of arbitration awards—a process that is designed under the FAA to encourage the use of arbitration, not to deter parties from using it. It would be bizarre indeed if Congress, by providing a means to confirm arbitration awards in 9 U.S.C. § 9, intended to nullify a material term of arbitration agreements providing that awards should be confidential.

The incremental value of unsealing an arbitration award attached to a petition to confirm is negligible because the petition remains public. The judicial process of confirming an uncontested arbitration award is spare and almost entirely devoid of reasoning or dispute. The "only request" in a petition to confirm "is to rubber stamp a decision that already has been made by an arbitrator"—privately. Zamoff, *supra,* 59 Am. Bus. L.J. at 550. The court simply performs a ministerial act to

17

transform the award into an enforceable court judgment. As the Supreme Court has explained, "[o]n application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (quoting 9 U.S.C. § 9). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.* Thus, when the award is unopposed, the confirmation action "becomes the functional equivalent of a rubber stamp." Zamoff, *supra,* 59 Am. Bus. L.J. at 524.

And the proceeding here, of course, did not involve even a rubber stamp. The only task before the district court evaporated before the court was called upon to engage with the request. The district court had no opportunity to examine any aspect of the case before it was dismissed, other than to reject Maheu's motion to seal as inadequate.

The Court's decision in *Stafford v. IBM* fully aligns with these controlling principles. 78 F.4th 62 (2d Cir. 2023), *cert. denied,* 144 S. Ct. 1011 (2024). The Court recognized that the presumption of public access was weak because there, as here, "[t]he confidential award played no 'role

18

in the exercise of Article III judicial power.'" *Id.* at 70 (quoting *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 85 (2d Cir. 2023), *cert. denied sub nom. Abelar v. IBM*, 144 S. Ct. 827 (2024)). In contrast, the strong federal policy favoring arbitration—including the confidentiality of arbitration proceedings—weighed in favor of preserving the confidentiality of the award, as did the plaintiff's expressed desire to use the award in other proceedings despite the contrary terms in the arbitration agreement. *Id.* at 71.

The district court disregarded *Stafford*, however, because it viewed *Stafford*'s discussion of the common-law right of access as inconsistent with the First Amendment test applied in *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016), and other cases. But this Court already considered and rejected such arguments. The unsuccessful petitioner-appellee in *Stafford* (represented by the same counsel as Plaintiff Maheu here) raised—and this Court necessarily rejected—the same First Amendment arguments. *See* Pet'r-Appellee's Resp. Br. at 22–29 (redacted), *Stafford v. IBM*, 78 F.4th 62 (2d Cir. 2023) (No. 22-1240), Dkt. 62. And the Court followed the *Stafford* analysis in *Giuffre*, 146 F.4th at 175, 178 n.9, where media appellants advanced

19

similar First Amendment contentions. *See* Br. for Intervenors-Appellants at 14–18, 21–25, *id.*, (No. 24-182), Dkt. 37.

In contrast to *Bernstein*, where the defendant sought to seal the complaint itself, there is no danger here of "leav[ing] the public unaware that a claim has been leveled and that state power has been invoked—and public resources spent—in an effort to resolve the dispute." 814 F.3d at 141. The public knows that Maheu sought to enforce a confidential arbitration award in his favor against X Corp.

Thus, under the governing legal principles, only a weak presumption of public access applies to a confidential arbitration award attached to an uncontested petition to confirm. As next explained, that presumption can and should be overcome here and in most cases.

### 2. The robust federal policy favoring enforcement of arbitration agreements as written overrides any presumption of public access.

Any First Amendment presumption of public access may be rebutted by showing that maintaining confidentiality "is essential to preserve higher values and is narrowly tailored to serve that interest." *CNS*, 131 F.4th at 67 (quoting *Press-Enter.*, 478 U.S. at 13–14); *see also Stafford*, 78 F.4th at 70 (considering "all of the factors that legitimately

counsel against disclosure of the judicial document"). The "weaker presumption of public access in this case is readily outweighed by the FAA's strong policy protecting the confidentiality of arbitral proceedings." *IBM*, 76 F.4th at 86.

As this Court has explained, the Supreme Court has used the term "higher value" "interchangeably with 'overriding interest.'" *CNS*, 131 F.4th at 68 (quoting *Waller v. Georgia*, 467 U.S. 39, 48 (1984)). The analysis requires "comparison of the benefit sought through" nondisclosure with "the harm to the First Amendment interest in disclosure." *Id.* The greater the social value of the benefit, and the less the harm to First Amendment interests, "the more likely that the value preserved is a 'higher value.'" *Id.* And courts have found a wide variety of interests to constitute "higher values," including "significant and substantial privacy interests" and "maintaining 'the integrity of significant activities entitled to confidentiality.'" *Id.* at 68–69 (footnotes omitted).

The legislative and judicial policies to "rigorously enforce arbitration agreements according to their terms" (*American Express*, 570 U.S. at 233 (cleaned up))—including their confidentiality provisions—are

21

exactly the type of "higher values" that justify nondisclosure of judicial documents. The whole point of the FAA is "to authorize a private adjudicatory alternative to public trial." Reuben, *supra,* 54 U. Kan. L. Rev. at 1281; *see also id.* at 1296. And as explained above, confidentiality has long been recognized as a key characteristic of arbitration and a key incentive for parties to arbitrate.

This Court has repeatedly recognized "the 'FAA's strong policy protecting the confidentiality of arbitral proceedings.'" *Stafford*, 78 F.4th at 70 (quoting *IBM*, 76 F.4th at 86 ). That policy—part of the FAA's policy of enforcing arbitration agreements as written—is a "higher value[]" (*CNS*, 131 F.4th at 67) sufficient to outweigh the presumption of public access in this case, especially when bolstered by the "significant and substantial privacy interests" implicated here (*id.* at 69): "the fundamental privacy interest that motivates many commercial parties to arbitrate," specifically the "interest in avoiding a public decision." Zamoff, *supra,* 59 Am. Bus. L.J. at 550. Making bargained-for confidentiality meaningless whenever a party seeks to enforce an arbitration award would deprive arbitration of one of its principal benefits.

22

### 3. When a petition to confirm is uncontested, the entire confidential arbitration award should be sealed.

Under the First Amendment, sealing of judicial documents also must be "narrowly tailored." *CNS*, 131 F.4th at 67. What tailoring is sufficiently narrow will depend on the confirmation proceeding. For an uncontested petition to confirm—and even more for a petition, like the one in this case, that was dismissed before the court addressed it—the full award should be sealed because the only aspects relevant to public knowledge about court activity will be incorporated into the court's judgment. As Professor Zamoff observed, "the purpose of creating a presumption of access to judicial documents is not to permit voyeurism of confidential disputes, but to provide the public with the materials it genuinely needs to meaningfully process the public disputes that are litigated in the courts." Zamoff, *supra,* 59 Am. Bus. L.J. at 547. If the Court disagrees that the entire award should remain sealed, the parties should have an opportunity to justify partial redaction as X Corp. requests. *See* X Corp. Br. 34–35, Dkt. 28.

Even when confirmation is contested or a party seeks to vacate an arbitration award, full public disclosure of a confidential arbitration award should not be the default presumption. A petition to vacate often

23

does not place the merits or contents of the award at issue, given the limited grounds for judicial intervention under 9 U.S.C. § 10(a). Some challenges extrinsic to the award—such as "corruption, fraud, … undue means," "evident partiality," or "other misbehavior" (9 U.S.C. § 10(a)(1), (2), (3))—might not justify unsealing any part of an award. Other challenges on those or different statutory grounds might justify unsealing some or even all of an award. Whether such steps to preserve confidentiality qualify as narrowly tailored will necessarily depend on the specific facts and circumstances of each situation, presenting issues beyond the scope of this simple case.

> **4. Permitting the mere invocation of the confirmation procedure to nullify confidentiality provisions in arbitration agreements would have harmful consequences.**

Affirmance in this case would give "[t]he prevailing party in an arbitration … unilateral power to invalidate the confidentiality agreement … simply by petitioning a court to confirm the award." Zamoff, *supra,* 59 Am. Bus. L.J. at 553; *see also id.* at 554. The Court should not countenance that result.

The Court in *Stafford* and *IBM* took note of the explicit effort by the plaintiffs' counsel—also counsel for plaintiff Maheu here—to evade the

24

arbitration agreements' confidentiality provisions. *See Stafford*, 78 F.4th at 71; *IBM,* 76 F.4th at 86; *see also* X Corp. Br. 13–17 (detailing pattern of conduct). Although the direct request for unsealing here comes from Intervenor New York Times, the Court characterized the same counsel's intent "to evade the confidentiality provision to which Stafford agreed in her arbitration agreement" as "a strong countervailing consideration against unsealing." *Stafford*, 78 F.4th at 71. Indeed, the Court noted that it had "rejected similar attempts by Stafford's counsel to unseal confidential documents obtained in individual arbitrations by filing them in court." *Id.* at 70 (collecting cases); *see also Billie v. Coverall N. Am., Inc.*, No. 23-672-cv, 2024 WL 4380618, at \*3 (2d Cir. Oct. 3, 2024) (rejecting same counsel's effort to unseal arbitration award in confirmation proceeding).

This case reflects a modest change in tactics. Counsel did not pursue the confirmation proceeding after the defendant had paid in full—and mooted the proceeding—as in *Stafford*. Instead, counsel voluntarily dismissed the action shortly after filing it. Nine days later, the New York Times became interested in the case—though it apparently could not articulate why. *See* X Corp. Br. 10.

The same concerns expressed in *Stafford*, *IBM*, and *Billie* apply when a media organization nominally seeks disclosure. Unsealing the award immediately makes it available to counsel for use in other proceedings despite the contrary provision in the arbitration agreement. Any other counsel would have the same benefit. And, of course, if the Times published a report of the award, still more parties could use the award in litigating or arbitrating other cases, in pre-filing or post-filing negotiations, and in deciding whether to file a claim in court or before arbitrators.

The Court should not "create a legal loophole allowing parties to evade confidentiality agreements simply by attaching documents to court filings," including uncontested petitions to confirm confidential arbitration awards, "and then invoking the presumption of access to judicial documents." *IBM*, 76 F.4th at 86. If agreed-upon confidentiality of arbitration awards is so fragile that courts expose even uncontested awards to the public, confidentiality provisions are practically worthless—and the parties "will lose one of the essential benefits of the arbitration bargain." Zamoff, *supra,* 59 Am. Bus. L.J. at 506. That inevitably will make both individuals and commercial litigants "reluctant

26

to submit their confidential disputes to arbitration." *Id.*; *see also* Schmitz, *supra,* 54 U. Kan. L. Rev. at 1239. Discouraging arbitration in that way not only contravenes federal policy but also will shift disputes from arbitral forums to the courts, further burdening already-overcrowded dockets. The Court should make clear that confidential arbitration awards do not become public documents when submitted for the ministerial act of confirmation.

## CONCLUSION

The order of the district court should be reversed.

October 15, 2025

Respectfully submitted,

*/s/ Donald M. Falk*

Jonathan D. Urick
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
Telephone: (202) 659-6000
jurick@uschamber.com

Donald M. Falk
SCHAERR|JAFFE LLP
One Embarcadero Center
Suite 1200
San Francisco, CA 94111
Telephone: (415) 562-4942
dfalk@schaerr-jaffe.com

Gene C. Schaerr
SCHAERR|JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
gschaerr@schaerr-jaffe.com

*Counsel for Amicus Curiae*

27

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Fed. R. App. P. Rule 29(a)(5) and Local Rule 29.1(c) because it contains 5,069 words, excluding the parts exempted by Fed. R. App. P. 32(f); and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the body of the brief has been prepared in 14-point Century Schoolbook font using Microsoft Word 2016.

Dated: October 15, 2025

*/s/ Donald M. Falk*
Donald M. Falk